**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RONALD LEMAS,                                    No. C 07-00958 SI

          Plaintiff,                          **ORDER DENYING DEFENDANT**
**BROWN'S MOTION TO DISMISS**
  v.

JILL BROWN, et al.,

          Defendants.
_____/

      On August 17, 2007, the Court heard argument on defendant Jill Brown's motion to dismiss. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court DENIES defendant's motion.

**BACKGROUND**

      On May 9, 2006, plaintiff Ronald Lemas, then a prisoner at Avenal State Prison, filed a civil action in the Superior Court of the State of California, County of Marin.[1]  On February 15, 2007, defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(b).

      Lemas's claims arise out of two separate events that occurred while he was incarcerated at San Quentin State Prison.  The first event was a fall suffered by Lemas on the way to a hearing within the prison.  On or about April 18, 2005, Does 1-30, guards at San Quentin, escorted Lemas from his cell to another location for a hearing.  Before taking Lemas to the hearing, Does 1-30 handcuffed his hands behind his back.  During the walk to the hearing, while handcuffed, Lemas fell down a flight of stairs.

[1]*Ronald Lemas v. State of California, et al.*, Case No. CV 061983.

1    Lemas alleges that the fall resulted in severe injuries to his back and other parts of his body. The

2    remainder of Lemas's claims arise out of an alleged denial of "good time" credits. Lemas claims that

3    Does 31-50 wrongfully denied him these credits, resulting in an extra 90 days of incarceration.

4       After conducting a screening review under 28 U.S.C. § 1915A, this Court dismissed several of

5    plaintiff's claims against various defendants. Defendant Jill Brown has now moved to dismiss the

6    remainder of plaintiff's claims for failure to fully exhaust his administrative remedies.

7

8                  **LEGAL STANDARD**

9       A prisoner's failure to exhaust administrative remedies is a matter in abatement. Defendants

10    have the burden of raising and proving the absence of exhaustion, and may do so by way of an

11    unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding

12    a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the

13    pleadings and decide disputed issues of fact." *Id.* at 1119-20, citing *Ritza v. Int'l Longshoremen's &*

14    *Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988). The court can decide factual issues in a

15    jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the

16    case, unlike the merits of the case (where there is a right to a jury trial). *See id.*

17

18                   **DISCUSSION**

19       Defendant Brown requests that the Court dismiss all of plaintiff's claims because he failed to

20    exhaust his administrative remedies, as required by Federal law. For the following reasons, the Court

21    DENIES defendant's request.

22       The Prison Litigation Reform Act (PLRA), provides in pertinent part: "No action shall be

23    brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

24    prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as

25    are available are exhausted." 42 U.S.C. § 1997e(a). The State of California provides its inmates and

26    parolees the right to "appeal" administratively "any departmental decision, action, condition or policy

27    perceived by those individuals as adversely affecting their welfare." *See* 15 Cal. Code Regs. §

28    3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must

**United States District Court**
For the Northern District of California

2

proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *See id.* § 3084.5; *Ngo v. Woodford*, 126 S. Ct. 2378, 2383 (2006); *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).

Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 532. The PLRA exhaustion requirement requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006).

In this case, plaintiff first argues that because he is no longer incarcerated, the PLRA exhaustion requirements do not apply to him. The Ninth Circuit, however, in *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000), held that "individuals who, *at the time they seek to file their civil actions*, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 42 U.S.C. § 1997e and 28 U.S.C. § 1915." (emphasis added). Plaintiff here was detained for a criminal offense at the time he filed this action, and the PLRA exhaustion requirements therefore apply to him.

Plaintiff next argues that he is not suing over prison "conditions," and therefore the PLRA exhaustion requirements do not apply. The Supreme Court explicitly rejected such an argument in *Porter*, 534 U.S. at 532. In *Porter*, the Supreme Court expressly held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Plaintiff offers no authority supporting a contrary position. Under controlling Supreme Court precedent, his claims are based on prison conditions and governed by the PLRA's exhaustion requirement.

Plaintiff's third argument is that no "administrative remedies" were "available" to him. As

United States District Court
For the Northern District of California

mentioned above, the PLRA requires exhaustion of "such administrative remedies as are available." 42 U.S.C. § 1997e(a).  The Supreme Court addressed the issue of what constitutes an "available" "remedy" in *Booth*, 532 U.S. at 731.  Specifically, the Supreme Court addressed "whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money."  532 U.S. at 734.  The Court answered in the affirmative, holding that while "some redress for a wrong is presupposed by the statute's requirement of an 'available' 'remedy,'" *id.* at 736, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures," *id.* at 741.

Interpreting *Booth*, the Ninth Circuit held in *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2004), that "the statutory language does not require exhaustion when *no* pertinent relief can be obtained through the internal process." *Id.* at 935 (emphasis in original).  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'" *Id.* (emphasis in original).  Accordingly, and because failure to exhaust is an affirmative defense, "a defendant must demonstrate that pertinent relief remained available." *Id.* at 936-37.  The court continued:

> Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case, such as in the response memoranda in these cases. With regard to the latter category of evidence, information provided the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Id.* at 937 (citing case).

The Ninth Circuit then applied its interpretation of *Booth* to the cases of two California prisoners before it.  In the first case, the plaintiff proceeded only through the second of three possible levels of formal appeal provided by California's Department of Corrections.  *See id.* at 929-30.  Consequently, the defendants argued that he had not properly exhausted his administrative remedies.  The Ninth Circuit held:  "While [defendant] argues that an appeal to the [third] level might have netted additional relief to [plaintiff], he produced no evidence . . . that it could have." *Id.* at 939.

> The evidence [defendant] submitted consisted of a declaration from the Chief of the Inmate Appeals Branch confirming that [plaintiff] did not file an appeal relating to this case at the third level and an appeal [plaintiff] did file at the third level regarding an entirely separate incident, involving a different corrections officer.  This evidence does

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> not demonstrate that the appeals process could have, or did, yield any relief under circumstances similar to those here.

*Id.*

> In lieu of evidence, [defendant] now proffers that, "one can easily imagine actions that [the Department] could have taken to provide relief to [plaintiff]. For example, the [Department] could have transferred [defendant] to a different post, transferred [plaintiff] to a different cell or prison, or modified its policies and procedures concerning the use of pepper spray. At a minimum, CDC could have afforded Brown another opportunity to be heard." (Emphasis added.) Establishing, as an affirmative defense, the existence of further "available" administrative remedies requires evidence, not imagination.

*Id.* at 939-40.

The Court finds that in this case, as in *Brown*, defendant has provided no evidence to "demonstrate that the appeals process could have, or did, yield any relief under circumstances similar to those here," *id.* at 939. With respect to the staircase incident, defendant states only: "If Plaintiff had filed an inmate appeal, prison officials could have investigated the allegation, providing an administrative record of the incident." Reply at 3:24-26; *see also* Mot. at 5:18-19 ("Had plaintiff filed an administrative grievance in this case, an investigation could have been conducted, and any parties involved could now be easily identified."). Defendant cites no evidence in support of these statements.[2] Similarly, with respect to plaintiff's denial of "good time" credits claim, defendant states, with no evidentiary support: "Had Plaintiff raised this issue in an administrative appeal, prison officials could have investigated the incident, and if the allegations proved to be true, released Plaintiff from custody." Reply at 3:27-4:1. As the Ninth Circuit stated, "[e]stablishing, as an affirmative defense, the existence of further 'available' administrative remedies requires evidence, not imagination." *Brown*, 422 F.3d at 940. Defendant has thus not met her burden of establishing this affirmative defense.

In addition to the foregoing, the Court is troubled by plaintiff's assertion that when he explicitly asked prison officials what he needed to do before filing a lawsuit, he was told that he needed to file a claim with the State of California Government Claims Board. He was never told, he asserts, that he needed to file a CDC 602 form. *See* Lemas Decl. ¶¶ 5-7. Defendant provides no evidence to contradict plaintiff's testimony, but instead argues that "[p]laintiff has admitted in his declaration that he is familiar

---

[2]Furthermore, the Court is skeptical that mere investigation, without potential consequences, constitutes a "remedy."

**United States District Court**
For the Northern District of California

with the grievance system, and therefore his argument that he did not know he had to file an inmate appeal must fail." Reply at 4:20-22. Were the procedures and purpose of the grievance system clear, the Court might agree with defendant. However, California's grievance procedures, as reflected in the CDC 602 form, do not clearly and obviously apply to plaintiff's situation. The instructions printed on the 602 form, which is labeled "Inmate/Parolee Appeal Form," state in pertinent part: "You may appeal any policy, action or decision which has a significant adverse affect upon you." Pl.'s Ex. 2; *see also* 15 Cal. Code. Reg. § 3084.1(a) ("Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare.").

Plaintiff in this case sought to complain and seek redress for being allowed to fall down a flight of stairs while handcuffed. He was not "appealing" this action. On its face, therefore, it is not obvious that California's grievance procedure, which is repeatedly framed as an "appeals" process, covered plaintiff's grievance. The myriad cases dealing with exhaustion in the California prison system make apparent that prison officials, the courts, and many prisoners treat form 602 as the appropriate starting point for any sort of grievance, and not just "appeals." *See, e.g., Brown*, 422 F.3d at 929 ("California's Department of Corrections provides a four-step *grievance* process for prisoners who seek review of an administrative decision *or perceived mistreatment*.") (emphasis added). However, it is reasonable that in light of the nature of his grievance, after inquiring about the prerequisites for filing a lawsuit and hearing no mention of the form 602, even a prisoner such as plaintiff, who is generally familiar with the prison system and form 602, would not understand form 602 to be appropriate, much less mandatory. *See* Lemas Decl. ¶ 6 ("I did not believe I was supposed to fill out a CDC 602 form . . . . I was not appealing a 'policy, action or decision' . . . .").

The parties do not cite, and the Court has not found, any case dealing with exhaustion where a prisoner, in good-faith, reasonably believed that the ordinary administrative remedies were not appropriate. The Second Circuit, however, has provided a useful framework for analyzing such a situation. In *Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004), the court stated:

> a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA. Depending on the inmate's

explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. The court should also inquire as to whether . . . the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements."

*Id.* at 686 (internal citations omitted). Applying that framework to the case of a prisoner who had allegedly been assaulted by prison guards and threatened with further violence if he reported the assault, the Second Circuit remanded to determine: (1) "whether some seemingly available remedies were rendered unavailable by the threats [the prisoner] received," *id.* at 688; and (2) whether "threats should estop the defendants from presenting an affirmative defense of non-exhaustion," *id.* With respect to the third inquiry, whether "special circumstances" justify non-compliance with available remedies, the Second Circuit stated that a prisoner's erroneous but "reasonable interpretation" of grievance procedures may constitute such a special circumstance. *Id.* at 689.

Applying the Second Circuit's three-part inquiry to this case would cast significant doubt on defendant's exhaustion defense. If, in fact, prison officials told plaintiff only that he needed to file a claim with the State of California Government Claims Board prior to filing a suit, equitable estoppel might be appropriate. Similarly, plaintiff's reliance on the prison officials' instructions, coupled with his reasonable interpretation of the function of 602 "appeals" form, may constitute "special circumstances" excusing non-compliance with California's grievance procedures. The Court need not reach these decisions, however, having already found that, under Ninth Circuit law, defendant has not met her burden of establishing the existence of "available" remedies. *See Brown*, 422 F.3d at 926.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby denies defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: September 4 , 2007

SUSAN ILLSTON
United States District Judge