IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD LEMAS, | No. C 07-00958 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BROWN'S MOTION FOR SUMMARY JUDGMENT, AND ADDRESSING THE PARTIES' DISCOVERY DISPUTE** |
| v. | |
| JILL BROWN and DOES 1-100, inclusive, | |
| Defendants. | |

On November 2, 2007, the Court heard oral argument on defendant Jill Brown's motion for summary judgment and motion to dismiss. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS IN PART and DENIES IN PART defendant's motions. In addition, the Court GRANTS IN PART and DENIES IN PART plaintiff's motion for further discovery.

**BACKGROUND**

**I.   Factual and procedural background**

Plaintiff's claims arise out of two individual events during plaintiff's incarceration at San Quentin State Prison. The first event is a fall suffered by plaintiff. On or about April 18, 2005, Doe defendants 1-30, guards at San Quentin, escorted plaintiff from his cell to another location for a hearing. Handcuffed with his hands behind his back, plaintiff claims that the prison guards may have made unwanted physical contact with him, thereby causing him to fall down a flight of stairs. In other words, defendant prison guards may have pushed plaintiff down the stairs, but plaintiff unfortunately has no memory of how the incident occurred. Plaintiff allegedly suffered severe injury to his back and other parts of his body, requiring two back surgeries. Plaintiff is currently receiving spinal epidural injection

1 to manage his back pain.

2 The second event giving rise to plaintiff's claims is an alleged denial of "good time" credits. Plaintiff claims that Does 31-50 wrongfully denied plaintiff his statutory sentence reduction earned by plaintiff's good conduct in prison, resulting in an extra 90 days of incarceration.

On May 9, 2006, plaintiff, then a prisoner att Avenal State Prison, filed a civil action in Marin County Superior Court.[1] On August 15, 2006, plaintiff dismissed all named defendants and amended the complaint to name defendant Jill Brown. On January 9, 2007, plaintiff filed his Second Amended Complaint. On February 15, 2007, defendant removed the action to this Court pursuant to 28 U.S.C. § 1441(b). Upon defendant Brown's request, the Court conducted a screening review pursuant to 28 U.S.C. § 1915A and, by order dated April 9, 2007, found the complaint to state valid claims against Does 1-30 for negligence, battery, and violation of civil rights under 42 U.S.C. § 1983 in connection with the staircase incident. The Court also found valid claims made against Doe defendants 31-50 for negligence and false imprisonment in connection with the denial of "good time" credits. The Court dismissed all other claims in the Complaint with leave to amend. Docket No. 6. On April 20, 2007, plaintiff filed a Third Amended Complaint, the operative pleading for this motion. By order dated September 4, 2007, the Court denied defendant Brown's motion to dismiss the suit on the ground that plaintiff failed to exhaust administrative remedies, because Brown did not meet her burden of proving such remedies were available to plaintiff.[2] Docket No. 30.

## II. Plaintiff's claims

Plaintiff's Third Amended Complaint alleges five causes of action. Plaintiff first claims that Does 1-50 negligently breached their duty of reasonable care owed to plaintiff by proximately causing plaintiff's fall and depriving plaintiff of his good time credits. Plaintiff's second cause of action alleges that defendants Brown and Does 51-100 acted negligently in screening, hiring, training, retaining,

---

[1] *Ronald Lemas v. State of California, et al.* (CV 061983).

[2] The motion to dismiss was brought by defendant Jill Brown only. Docket No. 15. Even though the non-exhaustion defense would apply to all defendants, the other Doe defendants could not bring such a motion because they were not identified in the complaint.

2

disciplining, supervising, managing, directing, and controlling employees under California Government Code §§ 820(a) and 844.6(d). Plaintiff argues that the negligent hiring and supervision of Does 1-50 proximately caused plaintiff's injuries in connection with his fall and deprivation of good time credits, and defendants knew or should have known that Does 1-50 posed a risk to plaintiff.[3]

In his third cause of action, plaintiff contends that Does 1-30 made non-consensual physical contact with plaintiff, proximately causing plaintiff to fall down a flight of stairs and sustaining injury. Plaintiff argues that the actions of Does 1-30 constitute battery. Plaintiff's fourth cause of action states a claim against Brown, Does 1-30 and 51-100 for violation of civil rights under color of law pursuant to 42 U.S.C. § 1983. Plaintiff argues that his civil rights were violated by Does 1-30 for their pushing or failing to hold plaintiff during his fall down the staircase; and by Brown and Does 51-100 for setting in place a policy or custom that allowed Does 1-30 to inflict constitutional injury on plaintiff and for condoning and ratifying such an infliction. In his fifth and final cause of action, plaintiff argues that by denying him the good time credits to which he is entitled, Does 31-50 violated his personal liberty and acted with the intent to confine him. Plaintiff contends that this wrongful act resulted in plaintiff serving time outside his legal term of incarceration, thereby constituting false imprisonment.

Defendant Brown now moves the Court for the following dispositions: summary adjudication of plaintiff's second and fourth causes of action on the grounds that the claims lack merit and that Brown is immune from suit; and dismissal of plaintiff's action on the ground that plaintiff failed to exhaust administrative remedies. Following oral argument on this motion, plaintiff also moved for an extension of the discovery period and for leave to conduct additional depositions.

**LEGAL STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden

---

[3] Does 1-30 are prison staff who allegedly escorted plaintiff and caused plaintiff's fall on April 18, 2005. Does 31-50 are prison staff who allegedly denied plaintiff good time credits.

3

of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Elec. Service, Inc.,* 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I. Summary judgment on the second cause of action

The second cause of action, labeled "negligent screening, hiring, training, retaining, disciplining, supervising, managing, directing and controlling" is brought against defendants Brown and Does 51-100 pursuant to the California Government Code. *See* Cal. Gov. Code § 820(a) (a public employee is liable for injury caused by her act or omission in the same way as a private person). In essence, plaintiff argues that the negligent hiring and supervision of Doe defendants 1-50 proximately caused plaintiff's injuries. The Court will address each allegation in turn.

#### A. Negligent hiring

Plaintiff asserts that defendants were negligent in hiring Does 1-50, and plaintiff suffered harm as a result. Defendant Brown argues that she did not know and had no reason to know of the risk created by the hiring of Does 1-50. In her statement to the Court, Brown asserts that the California Department of Corrections and Rehabilitation (CDCR) carries out the function of hiring correctional officers, and that Brown played no role in this hiring process. Brown Decl. at 2. As such, Brown argues

1 that she lacked the requisite knowledge of risk to establish a negligent hiring claim. In response, 2 plaintiff does not offer any evidence showing that Brown had in fact participated in the hiring of Does 3 1-50.

4 In California, an employer may be liable to a third party for negligence in hiring an incompetent 5 or unfit employee. *Underwriter Ins. Co. v. Purdie*, 145 Cal. App. 3d 57, 69 (Cal. Ct. App. 1983). An 6 employer must have knowledge or a reason to know that hiring an employee "created a particular risk 7 or hazard and that particular harm materializes." *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 8 (Cal. Ct. App. 1996). The Court need not address the question of whether Brown possesses the requisite 9 knowledge of risk. A more fundamental flaw in plaintiff's negligent hiring claim is the failure to 10 establish a legal duty owed by Brown for non-negligent hiring, a duty that Brown allegedly breached 11 in causing plaintiff's injuries. A common law tort involves "a violation of a legal duty, imposed by 12 statute, contract or otherwise, owed by the defendant to the person injured. Without such a duty, any 13 injury is an injury without wrong." 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts § 6, p. 61. 14 Taking all the briefs and materials submitted as true, the Court cannot find that Brown's employment 15 as warden at San Quentin encompassed the duty to hire prison staff, and plaintiff does not allege in any 16 way that Brown was involved in the hiring of the Doe defendants. Accordingly, the Court finds no 17 triable issue of material fact existed on the negligent hiring claim as stated in plaintiff's second cause 18 of action, and GRANTS defendant Brown's motion for summary judgment on the negligent hiring 19 claim. Fed. R. Civ. P. 56(c); *T.W. Elec. Service, Inc.,* 809 F.2d at 630.

### B. Negligent supervision

22 In his negligent supervision claim, plaintiff argues that Brown's negligence in supervising Does 23 1-50 proximately caused plaintiff's injuries. Brown again claims that she lacked the requisite 24 knowledge of risk or hazard in her supervision of Does 1-50, and therefore she is not liable for any 25 injuries caused by these correctional officers. Plaintiff argues that summary judgment on the negligent 26 supervision claim is premature because the identity of the Doe defendants is still being discovered, and 27 moves to continue Brown's summary judgement motion on this claim pursuant to Federal Rule of Civil 28 Procedure 56(f). *Cont'l Mar. v. Pac. Coast Metal Trades*, 817 F.2d 1391, 1395 (9th Cir. 1987)

1 (summary judgment motion may be continued to allow an opportunity for necessary discovery).

2 The Court agrees with plaintiff that the question whether Brown knew or had a reason to know that her supervision of the prison staff created a risk is premature at this point. Discovery for this suit is still pending, and plaintiff has been attempting to identify through third party discovery Does 1-50, the prison officers allegedly responsible for plaintiff's injuries.[4] Not knowing who the Doe defendants are, the Court cannot decide whether Brown had the requisite knowledge of risk in supervising these prison officers. Such an in-depth inquiry would require examining the relationship between Brown and the particular employees; inquiring into the type and extent of knowledge possessed by Brown; and comparing this knowledge to the nature of plaintiff's injuries. *See Capital Cities*, 50 Cal. App. 4th at 1054. The Court finds that plaintiff has demonstrated that the identification of certain correctional officers would lead to a triable issue of fact. Fed. R. Civ. P. 56(f); *Cont'l Mar.,* 817 F.2d at 1395 ("a party seeking a continuance bears the burden to show what specific facts it hopes to discover that would raise an issue of material fact."). The Court therefore GRANTS plaintiff's request to continue the summary judgment motion on the negligent supervision claim and DENIES WITHOUT PREJUDICE defendant's motion.

### C.     State law immunity

Defendant Brown also argues that she is immune from suit under California law on the negligent supervision claim. California Government Code § 820.2 states, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. Because "almost all acts involve some choice among alternatives, and the statutory immunity thus cannot depend upon a literal or semantic parsing of the word 'discretion,'" California courts distinguish between an employee's ministerial and policy decisions in determining whether the decision was discretionary.

---

[4] Plaintiff recently obtained a prison log sheet from April 18, 2005, that narrowed the list of staff who were on duty in the special housing unit on the date of the staircase incident to nine individuals. On September 6, 2007, plaintiff served eight subpoenas on CDCR seeking the production of documents and depositions of the persons most knowledgeable for the identity of the Doe defendants. Pl's Oppo. at 5, Ex. 1.

*Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995). Ministerial decisions are those that involve the "'operational' functions of government," whereas policy decisions are those that involve the "'planning' . . . functions of government." *Id.* Immunity is reserved for basic policy decisions which have been expressly committed to coordinate branches of government, "'areas of quasi-legislative policy-making [which] are sufficiently sensitive' to call for judicial abstention." *Id.* (quoting *Johnson v. California*, 69 Cal. 2d 782, 794 (1968)). In contrast, there is no immunity for ministerial decisions that "merely implement a basic policy already formulated." *Id.*

Based on the pleadings submitted, the Court finds that defendant Brown's supervision of the prison staff involved ministerial decisions which were part of the operational function of the prison, and that Brown is not immune from suit under § 820.2. Brown states that "[p]olicies were in place for the safe escort of inmates under restraint" and that Brown relied on custodial staff to "successfully execute the policies." Def. Motion at 4. Chapter 50000 of the California Department of Corrections Operations Manual (attached as Exhibit A to Brown's motion) provides detailed operational procedures for prison staff to follow when transporting inmates. In supervising the prison staff who carried out these transportation policies, Brown did not engage in the policy making or planning function of prison procedures, but was merely implementing a basic prison policy that was already formulated. *Johnson,* 69 Cal. 2d at 794.

In holding that mere adherence to set guidelines or policies by public officials is ministerial and not discretionary, the Court follows the rule set forth in *Doe 1 v. City of Murrieta*, 102 Cal. App. 4th 899 (Cal. Ct. App. 2002), in which the California Court of Appeal held that the failure of city and its police department to follow program rules and guidelines in their program to promote career options in law enforcement to juveniles was ministerial conduct. *Id.* at 913.

The cases cited by Brown are distinguishable from this case. Three of the cases, *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369 (N.D. Cal. 1997), *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426 (Cal. Ct. App. 1988), and *Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560 (N.D. Cal. 1993), all held that affirmative decisions to initiate disciplinary actions are discretionary conduct subject to governmental immunity. Plaintiff in this case does not claim that Brown failed to discipline employees. The other two cases, *Caldwell,* 10 Cal. 4th 972, and *Creason v. State Dep't of Health Servs.*,

7

18 Cal. 4th 623 (1998), both involve high-level, policy-making decisions within the discretionary power entrusted in the public officials and require determination of what is fair and beneficial to the public, far beyond the supervisory duties undertaken by Brown in this case. *Caldwell* concerned the school board members' exercise of their votes in firing the school district's superintendent, and *Creason* concerned the State's formulation of appropriate standards in testing and reporting test results of newborns' congenital defects. The present case is readily distinguishable, and the Court DENIES defendant Brown's motion as to immunity under California Government Code § 820.2.

## II.    Summary judgment on the fourth cause of action

Plaintiff's fourth cause of action alleges that defendants Brown, Does 1-30, and Does 51-100 violated plaintiff's civil rights under 42 U.S.C. § 1983 by causing plaintiff to fall down the staircase, by setting in place a policy or custom that allows others to inflict constitutional injury on plaintiff, and by condoning and ratifying such an infliction.[5] Defendant Brown moves for summary judgment on the § 1983 claim, arguing that she is protected by qualified immunity on this cause of action.

Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Mally v. Briggs*, 475 U.S. 335, 341 (1986)). A court considering a claim for qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn. v. Gabbert*, 526 U.S. 268, 290 (1999). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 202. On the other hand, if a violation could be made out on the allegations, "the next, sequential step is to ask whether the right was clearly established." *Id*. The Supreme Court has set forth the standard of a clearly established right: "The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*,

---

[5]Plaintiff is suing defendant Brown in her individual capacity, acknowledging that Brown, in her official capacity, was an "arm of the state", and that the state is not liable for monetary damages under section 1983. Pl. Oppo. at 12, citing *Hafer v. Melo,* 502 U.S. 21, 27 (1991).

8

**United States District Court**
For the Northern District of California

483 U.S. 635, 640 (1987).

As to the first step of the *Saucier* analysis, it is unclear from plaintiff's pleadings what constitutional violation was committed by defendants. At oral argument, however, plaintiff's counsel clarified that plaintiff's § 1983 claim depends upon plaintiff's determination, through discovery, that plaintiff was pushed down the stairs by some of the Doe defendants.[6] If this were the case, an Eighth Amendment violation may have occurred and the Doe defendants may have violated a clearly established right. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," such that the Eighth Amendment could be violated by a use of force that is not merely *de minimis*). If the Doe defendants did violate a clearly established right belonging to plaintiff, then defendant Brown might not be entitled to qualified immunity if plaintiff could show that Brown is liable in her individual capacity for participating in the deprivation of plaintiff's constitutional rights. *See Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) ("As Officer Chew's superior, Chief Samuels can be held liable in his individual capacity if he participated in the deprivation of Watkins' constitutional rights."). Brown could be liable "'for [her] own culpable action or inaction in the training, supervision, or control of [her] subordinates; for [her] acquiescence in the constitutional deprivation . . . or for conduct that showed a reckless or callous indifference to the rights of others,'" such as by declining to pursue an investigation into the use of force against plaintiff. *Id.* (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)). The Ninth Circuit has explained that it is clearly established that a supervisor may not "condone[], ratif[y], [or] encourage," *id.*, a subordinate's use of excessive force, *id.* at 1093-94 ("Since it was clearly established in *Larez* that a jury could hold Chief Samuels liable for ratifying Officer Chew's use of excessive force (if the jury finds it to be such), we affirm the district court's denial of qualified immunity to Chief Samuels on summary judgment.").

Accordingly, Brown's entitlement to qualified immunity depends in no small part on the identity of the Doe defendants and the circumstances of plaintiff's fall down the stairs, none of which is

---

[6]Plaintiff states that the trauma of his fall renders him amnesiac about how the fall occurred, therefore plaintiff cannot be sure how many guards pushed him, or whether he was in fact pushed. Pl. Oppo. at 14 n.6.

9

currently known to plaintiff. The Court recognizes that the question of qualified immunity should normally be decided prior to discovery. *See Crawford-El v. Britton*, 523 U.S. 574, 593 n.14 (1998) ("Discovery involving public officials is indeed one of the evils that *Harlow* aimed to address . . . ."). Under these circumstances, however, the Court holds that further discovery is necessary before the Court can determine whether Brown is entitled to qualified immunity. The Court does not believe this discovery will interfere with Brown's official duties because plaintiff plans to take discovery of prison guards who may have witnessed his fall or who may have knowledge of the circumstances of his fall. The Supreme Court has explicitly authorized this approach, explaining that no Supreme Court opinion "create[s] an immunity from all discovery. *Harlow* sought to protect officials from the costs of 'broad-reaching' discovery, and *we have since recognized that limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity.*" *Id.* (internal citation omitted) (emphasis added). Such limited discovery is necessary here, and the Court therefore DENIES WITHOUT PREJUDICE defendant Brown's motion for summary judgment based on qualified immunity.

### III. Motion to dismiss for failure to exhaust administrative remedies

Lastly, defendant Brown moves to dismiss plaintiff's suit on the theory that plaintiff did not exhaust his administrative remedies. On September 4, 2007, the Court issued an order denying Brown's motion to dismiss for plaintiff's failure to meet the Prison Litigation Reform Act's ("PLRA") requirement of exhausting the prison's grievance procedures before filing suit. Docket No. 30. Citing *Brown v. Valloff*, 422 F.3d 926 (9th Cir. 2004), the Court found that Brown could not use the PLRA's non-exhaustion affirmative defense because Brown did not meet her burden of establishing the existence of "available" remedies to plaintiff. Disregarding this prior order by the Court, defendant again asserts a non-exhaustion defense in this motion and moves to dismiss plaintiff's action.[7]

The Court will not revisit its prior order which denied defendant's motion to dismiss. Civil L.R.

---

[7]Brown argues that plaintiff's state law claims should also be dismissed for failure to exhaust administrative remedies. However, California's exhaustion rule mirrors the federal PLRA exhaustion rule, *Wright v. State of California*, 122 Cal. App.4th 659, 666 (2004). Therefore, rejection of Brown's PLRA defense necessarily defeats her defense under California law.

10

7-9(b); *Multnomah County v. Acands, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993) (absent "highly unusual circumstances," reconsideration of prior orders is only appropriate when there is newly discovered evidence; the previous decision was clearly erroneous or unjust; or if there is a change in the controlling law). Here, defendant does not claim that there is newly discovered evidence with respect to the administrative remedies available to plaintiff; the Court's previous order is not clearly erroneous nor unjust; and *Brown* is still controlling authority. The Court therefore DENIES Brown's motion to dismiss with prejudice. Neither defendant Brown nor other defendants may raise the exhaustion issue again in the future.

## IV. Discovery

Following oral argument on these motions, plaintiff filed a letter brief asking this Court to extend the discovery period by an additional 90 days, grant plaintiff an additional ten depositions, and permit plaintiff to conduct a second deposition of defendant Brown. In return, Defendant Brown filed a letter brief opposing these requests, and other letters followed. In essence, defendant argues that plaintiff has not been diligent in conducting discovery up until this point and therefore should not be granted additional time for discovery. The Court agrees that plaintiff could have been more diligent in seeking discovery, and also notes that it appears defendant and the CDCR have not been entirely forthcoming in responding to plaintiff's discovery requests. Thus, the actions of both parties have frustrated plaintiff's attempts to identify the Doe defendants and determine what happened during the incident in which plaintiff fell or was pushed down the stairs. The Court prefers to resolve this case on the merits, and therefore GRANTS plaintiff's request in part. The November 30, 2007 discovery deadline shall be extended for 45 days from the date of this order, and plaintiff shall be entitled to take an additional ten depositions.

The Court does not agree, however, that defendant Brown should be deposed again at this time. Although a second deposition of Brown may well be necessary in the future, deposing Brown at this point would be fruitless because plaintiff still has not identified the Doe defendants nor determined what caused his fall. Plaintiff also asserts that he needs to depose Brown to determine the identity of the Doe defendants involved in denying his "good-time credits." The Court does not see why this discovery

cannot be conducted in written form, such that plaintiff should instead serve written discovery on Brown or on knowledgeable third parties who could reasonably be expected to be in possession of this information.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant Brown's motion for summary judgment on the negligent hiring claim, DENIES WITHOUT PREJUDICE the motion for summary judgment on the negligent supervision claim, DENIES the motion for summary judgment on state law immunity grounds, DENIES WITHOUT PREJUDICE Brown's motion for summary judgement on qualified immunity grounds, and DENIES Brown's motion to dismiss on exhaustion grounds [Docket No. 34]. The Court also GRANTS IN PART and DENIES IN PART plaintiff's motion for further discovery [Docket No. 48].

**IT IS SO ORDERED.**

Dated: February 11, 2008

SUSAN ILLSTON
United States District Judge